IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYAN D. WELLS, <br><br> Plaintiff, <br><br> vs. <br><br> LORENZ FARM SERVICES, INC., and DENNIS L. LORENZ, <br><br> Defendants. | 4:12-CV-3085 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiff Ryan D. Wells' Motion for Partial Summary Judgment (filing 33). The Court has considered the parties' briefs (filing 34, 49, and 50) and Wells' index of evidence (filing 35). For the reasons discussed below, the Court grants Wells' motion.

**I. FACTUAL BACKGROUND**

The following facts are those stated in the parties' briefs that are supported by the record, that the parties have admitted, or that the parties have not properly resisted. *See,* NECivR 56.1(b)(1); Fed. R. Civ. P. 56(c)(1)(A) and (e)(2).

Wells conducts business as RW Farms. Filing 1 at 1, ¶ 1. As part of Wells' business, he regularly contracts for deliveries of hay to be made to various locations around the country. Filing 1-1.

Accordingly, in September 2011, Wells contracted with Defendants Dennis L. Lorenz and Lorenz Farm Services, Inc. ("LFS") for the purpose of securing a large quantity of hay for RW Farms. Filing 1-1. The parties agreed to enter into ten separate "Commodity Sales Contracts" in which "Wells agreed to purchase certain quantities of hay from LFS, and LFS agreed to sell said quantities of hay to Wells and deliver the same . . . ." Filing 1-1 at 1. At least six of the contracts required that LFS deliver hay to Garden City, Kansas; others required delivery to Hereford, Texas; and perhaps some of the hay was also to be delivered to Yuma, Colorado.[1] Filing 1-1 at 6-15.

---

[1] While none of the Commodity Sales Contracts list Yuma as a possible destination, the contracts do not all list a destination, and Yuma unquestionably appears on the "delivery schedule" described below. Filing 1-1 at 6-15. Moreover, while the parties' later contract

By March 2, 2012, however, the hay deliveries—as stipulated by the Commodity Sales Contracts—were behind schedule. Filing 1-1 at 1. Therefore, the parties agreed to form a new contract, the "Hay Delivery Agreement," which clarified important details such as the quantity of hay yet to be delivered, the specific locations for delivery,[2] and the dates on which delivery was required. Filing 1-1. These details were listed in the "delivery schedule," which was incorporated into the Agreement, and which superseded the Commodity Sales Contracts.[3] Filing 1-1 at 3, 15. Also, the parties agreed that, from that time on, the hay would be delivered in "strict accordance" with the delivery schedules. Filing 1-1 at 2. Accordingly, the parties provided dates upon which they would review and evaluate the progress of deliveries. Filing 1-1 at 2. And Lorenz personally guaranteed LFS' performance of the contract. Filing 1-1 at 4.

The Agreement also provided that, in the event LFS was having trouble meeting its delivery obligations, Wells could elect to help transport the hay at LFS' cost, through RJ's Trucking, a trucking company partly owned by Wells. Filings 1-1 at 2 and 35-1 at 1. However, this provision also stated that "[t]o the extent RJ does not have the capacity and/or availability to handle such loads, this shall not in any way reduce LFS' obligations herein." Filing 1-1 at 2.

The parties signed the Hay Delivery Agreement on March 2, 2012. Filing 1-1 at 4. And, as required under the agreement, Wells then deposited $150,000 with LFS to pre-pay for the commercial freight expenses that LFS expected to incur. Filing 34 at 7, ¶ 23; filing 49 at 2-3; filing 1-1 at 4.

The parties dispute much of what took place after March 2, 2012. Wells alleges that under the Agreement, LFS was supposed to have delivered 714 loads of hay by April 15, 2012, but had only delivered 90.  Filing 1 at 2. Throughout March and April of 2012, Wells let LFS know that he was concerned about the status of the deliveries.  Filing 35-1 at 4-7. Wells has provided copies of several such text messages that he sent to Defendants during March and April of 2012 which demonstrate his concern about the deliveries. Filing 35-1 at 4-7. For example, on March 14, 2012, Wells wrote:

---

(the "Hay Delivery Agreement") notes that they formed ten separate Commodity Sales Contracts, only nine are attached to Wells' Complaint. Filing 1-1.

[2] Garden City, Hereford, and Yuma were listed as the required locations for delivery.

[3] The Hay Delivery Agreement provides that "[t]o the extent that the delivery deadlines and/or delivery locations set forth in the delivery schedule(s) . . . are different than those set forth in the Commodity Sales Contracts, the delivery schedule(s) sheet shall be controlling." Filing 1-1 at 3.

> Bill what is actually going on here?? [sic] The way it is sounding to me is there is no hay or I mean not 33700 ton [sic] and especially not 8000 ton [sic] of 3x4 bales. I need to get 3000 ton [sic] of big squares to Hereford by 4-30-12. If this is not going to be possible you please need to call a spade a spade . . . ."

Filing 35-1 at 4. Similarly, on March 16, 2012, Wells wrote:

> Out of the 32000 ton [sic] you have left to haul you cannot tell me there is no where I can send my trucks Dennis?? [sic] In order for you to fulfill agreement [sic] you have to deliver 120 loads per week to me from today on Dennis. This needs to be addresses [sic] and resolved or it is going to cause much financial loss and responsibility to you. . [sic] Please respect my concern and step up to the plate and deliver how you agreed [sic]. Thanks again.

Filing 35-1 at 5.

Defendants, on the other hand, tell a different story. In their initial Answer, they allege that Wells breached the contract by failing to adequately provide trucks for picking up the hay. Filing 14 at 4. Defendants argue that Wells "refused and failed to cooperate and act in good faith regarding the use of [his] trucks for the pick-up and delivery of hay." Filing 49-1 at 2. And while Defendants admit that Wells did make an effort "to pick-up hay for delivery" on a few occasions, they allege that Wells improperly "demanded that Lorenz Farm Service pay the costs of a round trip for such truck" despite the fact that the trucks would have only carried hay one-way. Filing 49-1 at 2.

From there, however, Defendants' side of the story becomes somewhat confusing. In Defendants' response to Wells' Motion for Partial Summary Judgment, they admit one version of the story, but then argue a different one. First, Defendants admit that "[n]ot long after the Agreement was executed, LFS' and Lorenz' failure to meet delivery requirements became apparent." Filing 34 at ¶ 17; filing 49 at 3. However, Defendants later suggest that they *had* in fact met all of the delivery requirements, but that Wells had thwarted their attempts to deliver by improperly rejecting the hay. Filing 49-1 at 2. Therefore, they argue, "if Plaintiff had not rejected the hay . . . Lorenz Farm Service would have been current and not been in default of any of the terms and conditions of the Hay Delivery Agreement." Filing 49-1 at 2.

No matter what took place after March 2, 2012, however, it is clear that by the middle of April the parties' relationship had deteriorated.

- 3 -

Consequently, in light of what Wells alleges was Defendants' "material breach" of the contract, Wells "seasonably canceled the Agreement by written notice" on April 24 and demanded a return of his $150,000 deposit. Filing 1 at 2, ¶ 11.

Then, Wells filed the present complaint in this Court alleging that the Defendants had breached the Hay Delivery Agreement. Filing 1. Defendants answered and filed several counterclaims, which will be discussed in more detail below. Filing 14. Wells eventually filed the Motion for Partial Summary Judgment (filing 33) which is now before the Court, seeking summary judgment as to Defendants' counterclaims and their liability under the parties' contracts.

## II. STANDARD OF REVIEW

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2). The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011).

Furthermore, an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The nonmovant "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit finding in [the nonmovant's] favor." *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). Where the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson,* 643 F.3d at 1042.

## III. ANALYSIS

Wells argues that there are no genuine issues of material fact with regard to Defendants' counterclaims, and Defendants' liability under the Commodity Sales Contracts and/or the Hay Delivery Agreement. The Court will address each issue in turn.

**A. Defendants' Counterclaims Against Wells**

Defendants bring several counterclaims against Wells. Filing 14 at 4. And while Defendants' claims are put in the form of ten numbered paragraphs, Defendants essentially make one claim. Filing 14 at 4. Put simply, they allege that the Hay Delivery Agreement required "both parties to cooperate in various matters in the delivery of quantities of hay to Wells." Filing 14 at 4. Defendants contend that because Wells "failed and refused to cooperate in coordinating the pick-up and delivery of hay provided by Lorenz Farm," Wells breached the contract. Filing 14 at 4.

Under Nebraska law,[4] courts interpreting a contract must give effect to the parties' intentions at the time the writing was made. *Volquardson v. Hartford Ins. Co. of the Midwest,* 647 N.W.2d 599, 604 (Neb. 2002). When the terms of a contract are clear, they should be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Misle v. HJA, Inc.,* 674 N.W.2d 257, 264 (Neb. 2004). "In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract." *Id.*

Turning to the contract at issue, the Court finds that the terms of the Hay Delivery Agreement plainly show that Wells had no duty to pick up and deliver the hay. The relevant portion of the Agreement provided:

> If, at any one or more of the evaluation periods, the aggregate number of loads delivered to date is not within ten (10) of the total required loads established for said period as set forth on the delivery schedule(s) sheet (Exhibit "11"), LFS shall (at its

---

[4] Because this is a diversity case, state substantive law applies. *Emp'rs Reinsurance Co. v. Mass. Mut. Life Ins. Co.,* 654 F.3d 782, 789 (8th Cir. 2011). Also, because neither party has raised the choice of law question, and because Nebraska is the "forum state" in this instance, Nebraska contract law and Nebraska's Uniform Commercial Code apply by default. *BBSerCo, Inc. v. Metrix Co.,* 324 F.3d 955, 960 n.3 (8th Cir. 2003).

> own cost) pay RJ's Trucking, LLC[5] ("RJ") to pick up and deliver the load shortages at RJ's freight rate then in existence. Provided, further, however, that the parties understand and acknowledge that RJ shall only pick up and deliver said loads to the extent it has the capacity and availability so to do. To the extent RJ does not have the capacity and/or availability to handle such loads, this shall not in any way reduce LFS' obligations herein.

Filing 1-1 at 2. Several points are worth highlighting here.

At the outset, it is important to view this provision in its proper context. As explained above, under the parties' original agreement (the Commodity Sales Contracts), LFS and Lorenz were solely responsible for transporting the hay to Wells. *See* filing 1-1 at 1. However, by the end of February 2012, LFS had failed to deliver much of the hay, causing Wells to question LFS' ability to perform. Filing 1-1 at 1. The parties then entered into the Hay Delivery Agreement, which provided Wells with several assurances that LFS would deliver the hay. Filing 1-1 at 1. First, the parties set out a clear schedule for LFS to follow. Filing 1-1 at 15. Second, Wells agreed to prepay LFS $150,000 for freight charges. Filing 1-1 at 4. Third, the parties agreed that Lorenz would be personally liable in the event that LFS failed to deliver the hay. Filing 1-1 at 4. And fourth, the parties agreed to the provision at issue. Filing 1-1 at 2.

It is apparent, therefore, when this provision is read in context, that it was intended to give Wells the *option* to pick up the hay himself if LFS could not deliver it—not to *require* Wells to do so. It would make little sense for Wells to bind himself (or RJ's Trucking) to transport any portion of the hay after paying LFS a substantial sum for delivery and securing Lorenz's personal guarantee that LFS would perform.

Beyond that, RJ's Trucking is not a party to the contract. Filing 1-1 at 4. While Wells is a partial owner of RJ's Trucking, no one disputes that the two are separate entities. Filing 34 at 3. If the parties really intended to require RJ's Trucking to cooperate in transporting the hay, it would have been a party to the Agreement.

But most importantly, the plain language of the provision simply does not require that Wells or RJ's Trucking transport the hay. Instead, the provision expressly states the opposite by emphasizing, first, "RJ shall only pick up and deliver said loads to the extent it has the capacity and

---

[5] RJ's Trucking LLC is a Nebraska limited liability company, of which Wells is a partial owner. Filing 34 at 3.

availability so to do" and, second, "this shall not in any way reduce LFS' obligations herein." Filing 1-1 at 2.

In short, Defendant's counterclaims depend upon a construction of the Hay Delivery Agreement that is contradicted by its plain terms. Therefore, Wells' Motion for Summary Judgment is granted insofar as it relates to Defendants' counterclaims, and those counterclaims will be dismissed.

## B. Defendants' Liability Under the Contracts

Turning to the other half of Wells' Motion, Wells asserts that there are no genuine issues of material fact with regard to Defendants' liability under the Commodity Sales Contracts and/or the Hay Delivery Agreement. After construing the facts in a light most favorable to Defendants, the Court agrees.

Under Nebraska law, to prove that Defendants are liable, Wells must establish "the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002). Furthermore, in order to recover, Wells must defeat Defendants' affirmative defenses.

The parties agree that there was a promise in the form of several valid contracts. Filing 1 at ¶¶ 6, 14; filing 14 at ¶¶ 6, 14. The parties also agree that Wells can show damages of at least the amount of the deposits he paid to LFS. Filing 34 at ¶¶ 5, 23; Filing 49 at 2-3. Moreover, the parties agree that Wells satisfied all conditions precedent to LFS' performance under the contract.[6] Filing 1 at ¶ 15; filing 14 at ¶ 15. This leaves only one requirement: Defendants' breach.

As to breach, Defendants have told two different stories at various points in this litigation. Essentially, Defendants first said, "We couldn't deliver the hay because Wells wouldn't help pick it up," and then later said "We tried to deliver the hay but Wells refused it." And while it may be possible to reconcile the Defendants' various assertions, the fact that

---

[6] In their brief on summary judgment, Defendants purport to change their minds as to whether Plaintiff satisfied this factor. Filing 49 at ¶ 16. But once a defendant admits an item in a pleading, this admission is "in the nature of judicial admissions binding upon the part[y], unless withdrawn or amended." *Missouri Housing Development Commission v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) (citations omitted). It does not matter here, though, because—despite their best efforts to confuse matters—Defendants do not actually attempt to refute an earlier admission. Wells' acceptance of hay is not a "condition precedent." Under Nebraska law, "[a] condition precedent is a condition which . . . must be fulfilled before a duty to perform an existing contract arises." *Cimino v. FirsTier Bank, N.A.*, 530 N.W.2d 606, 613 (Neb. 1995). As Plaintiff notes, in this instance, "as a matter of logic, Wells could not reject hay based on poor quality before LFS and Lorenz had the obligation to deliver it." Filing 50 at 9.

Defendants did not adopt the second version until nearly 5 months after the start of this litigation certainly raises questions. *See* filing 49-1 at 2.

Even so, Defendants' assertions might have been enough to survive summary judgment—but they are also unsupported by the record and contrary to Defendants' own admissions. To begin with, in the same filing in which Defendants introduce Wells' supposed rejections of hay, they also admit that "[n]ot long after the Agreement was executed, [their] failure to meet delivery requirements became apparent . . . ." Filing 34 at ¶ 17; filing 49 at 3. Defendants do not try to explain away this contradiction; nor is the Court required to do so on their behalf. Under NECivR 56.1(b)(1):

> The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

(Emphasis in original.)

More importantly, Defendants also fail to offer any evidence persuasively establishing that Wells actually rejected deliveries of hay—even in the face of the evidence Wells has placed in the record supporting the opposite conclusion. Filing 35-1 at 4-7. Lorenz asserted in his affidavit that hay was refused. Filing 49-1 at 2. But his statement is conclusory, and unsupported by any foundation. Lorenz does not explain when Wells supposedly rejected any hay deliveries, or aver any facts supporting the conclusion that the hay supposedly delivered was satisfactory. Nor is there any basis for Lorenz's conclusion that the Defendants' failure to deliver substantial quantities of hay was *entirely* attributable to such rejections. Or, stated another way, there is no foundation for Lorenz's conclusions. While Lorenz avers that his conclusory assertions are based on "personal knowledge," he never identifies the source of that knowledge—he never says that he witnessed these events, or how else he might have learned of them.

To survive a motion for summary judgment, parties must provide the court with more than mere speculation or conjecture. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). And it is well established that "unsupported self-serving allegations" are similarly

insufficient. *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). Lorenz's affidavit is the very definition of unsupported and self-serving. Therefore, because Defendants' allegations are conclusory, at odds with the record, and contradicted by Defendants' own admission under NECivR 56.1(b)(1), the Court finds that Defendants' breach of the contract is established as a matter of law.

Finally, in order to demonstrate that there are no genuine issues of material fact regarding Defendants' liability under the contract, Wells must also survive Defendants' affirmative defenses. Defendants raise three affirmative defenses. First, Defendants contend that "Plaintiff is estopped from claiming a default under [the contract] . . . [because he] fail[ed] to comply with the terms and conditions of said contract." Filing 14 at 3. While Defendants do not explain how Wells failed to comply with the contract, they are apparently referring to their allegation that Wells failed to cooperate in transporting the hay. Filing 14 at 3-4. As already discussed, however, there was no requirement in any contract between the parties that Wells cooperate in transporting the hay. Therefore, this defense is meritless.

Second, Defendants assert that "Plaintiff has waived any and all defaults . . . [by] acquiescence to the Defendant's [sic] compliance with contract terms." Yet Defendants fail to provide any evidence supporting this assertion. Instead, the record supports the opposite conclusion. Wells has provided several pages of text messages and emails clearly demonstrating his anxiety about whether Defendants were going to perform. Filing 35-1 at 4-7; filing 35-2 at 4-13. This defense is also meritless.

Finally, Defendants argue that Wells has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Put simply, Rule 12(b)(6) requires that Wells' complaint contain factual allegations that are sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, the Court takes as true all facts alleged in the complaint. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 662 (8th Cir. 2012).

Here, Wells has stated a claim for relief. As discussed above, in order to recover, Wells must establish the existence of a promise, its breach, damage, and compliance with any conditions precedent to Defendants' duty. *Henriksen*, 643 N.W.2d at 658. Wells' complaint alleges facts supporting each of these elements, and Defendants have admitted all of these requirements.

## IV. CONCLUSION

The Court finds that Wells is entitled to partial summary judgment. Lorenz and LFS have failed to present evidence from which a reasonable jury could find that their counterclaims are successful or that they are not liable

under the contracts between the parties.

IT IS ORDERED:

1. Plaintiff Wells' Motion for Partial Summary Judgment (filing 33) is granted.

2. Defendants are liable to Wells for breach of contract, as set forth in this Memorandum and Order, for an amount yet to be determined.

3. Defendants' counterclaims are dismissed.

Dated this 15th day of November, 2012.

BY THE COURT:

John M. Gerrard
United States District Judge